## TILLAR v. CLEVELAND.

1. USURY: *Shift for.*

Cleveland asked of Tillar the loan of $270 to buy a town lot, offering to pay interest on it at ten per cent. per annum. Tillar replied that his money was worth more to him than ten per cent., and proposed to take the deed for the lot to himself, and to convey to Cleveland upon his paying rent at $30 per month for twelve months. This was agreed to, and the deed was executed by the

seller to Tillar; Cleveland executed twelve notes for $30 each, and Tillar executed bond to convey the lot upon payment of the notes; and Cleveland also executed a deed of trust upon the lot to secure their payment. Afterwards, to a bill in equity by Tillar to foreclose the trust, Cleveland by cross-bill set up the above facts, and offered to pay the $270 and lawful interest, and demanded a deed. Held: That the transaction was a shift for usury, and that Cleveland was entitled to the deed upon payment of the $270 and six per cent interest.

2. SAME: *Evidence.*

Parol evidence is admissible to show that a written contract for land was a cloak for usury.

3. HUSBAND AND WIFE: *Title bond to wife.*

When a bond is executed by the vendor for conveyance of land to a wife upon payment of purchase notes executed by her and her husband. and she afterwards dies, the husband can not upon payment of the notes take title to the land to himself. It belongs to the heir of the wife.

4. PRACTICE IN SUPREME COURT: *Infant's appeal.*

This court will protect the rights of infants, though they have not appealed from the decree of the chancellor to their prejudice.


APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Circuit Judge.


*McCain & Crawford* for Appellant.

1. There was no usury in the transaction. Tillar bought the lot, and sold it to Cleveland at a profit.

2. It was error to admit parol testimony to prove that Harding sold the land to Cleveland instead of Tillar.

3. The court erred in requiring the deed to be made to Cleveland instead of the child. Mrs. Cleveland held the bond for title, and on her death the land descended to her heir.

4. The court could not change the contract and then enforce it. *Waterman on Spec. Perf., sec. 147 note 4.* As Tillar purchased in his own name and with his own money, he could not be held as a trustee for Cleveland. *Reed Stat. Frauds, sec. 822.* See also *32 Ark., 358; Dumphy v. Ryan, 116 U. S., 491.*

*N. T. White* for Appellee.

1. The entire transaction was a mere cover for usury. *18 Ark., 369.*

2. Parol evidence is admissible to impeach the consideration of a deed, mortgage, deed of trust or promissory note for usury. *7 Ark., 146; 11 Id., 16; 36 Id., 248.* See also *Tyler on Usury, pp. 300–1; Ib., 469; 1 Gray, 431; 8 Wend., 554; 9 Cow., 65; 13 Wend., 570; 12 Barb., 360; 3 Parsons Cont., pp. 108–115; 9 Peters, 418; 12 Ohio, 544; 7 Paige, 615; 4 Hill, 255; 11 Ala., 236; 3 Green, N. J., 255; 27 Miss., 801; Reed Stat. Frauds, sec. 1121.*

3. If it was error to decree that the deed should be made to Cleveland instead of the child, it was not prejudicial to appellant.

4. It was equitable and just to first purge the contract of usury and then enforce it. *18 Ark., 369.*

SMITH, J. It appears from the pleadings and proofs in this case that Cleveland, a clerk in a store of which Tillar was one of the proprietors, had made a parol bargain with the owner for the purchase of a lot in Pine Bluff, upon which stood an unfinished dwelling-house. The price of the lot was $150, and it was estimated that $120 would be required to complete the house. And Cleveland applied to Tillar to borrow these several sums, offering security and the payment of the highest rate of legal interest. Tillar replied that his money was worth more than ten per cent. per annum, but proposed to advance the necessary sum, provided the legal title was conveyed directly to himself, and Cleveland would agree to pay rent for twelve months at the rate of $30 a month; after which he would reconvey to Cleveland or his wife. These terms Cleveland was forced by his necessities to accept. He drew the

18——47

money from the book-keeper of the establishment, paid the purchase price, and expended the remainder in the improvement of the property. The lot was conveyed to Tillar, the seller not examining the deed, but supposing all the time that Cleveland was the grantee named therein. Promissory notes were made by Cleveland and wife for the monthly installments of so-called rent; and Tillar agreed and bound himself in writing to make a deed to Mrs. Cleveland when the last of the notes should be paid. The Clevelands went into possession; but the wife soon afterwards died intestate, leaving an infant daughter as her sole heir. Cleveland then surrendered the bond for title which his wife had held to Tillar, received a new bond to himself as obligee, and executed a deed of trust upon the lot to secure the payment of the outstanding notes and also of another debt which he had incurred to Tillar. This last-mentioned debt had been discharged before the commencement of the present suit; and partial payments had been made on the original indebtedness.

Tillar now filed his bill to foreclose this deed of trust, but afterwards amended his bill, setting out the entire transactions between the parties and asking for a decree for the balance due on the notes. Cleveland pleaded usury, alleging that he, and not Tillar, was the purchaser from the former owner; that he had borrowed money from Tillar, and that the conveyance to Tillar was contrived merely as security for the loan and the usurious interest. He made his answer a cross-bill, offered to pay the balance of principal due on the notes, with lawful interest, and demanded a reconveyance. Mrs. Cleveland's infant child was made a party to the bill; and her guardian *ad litem* adopted the answer and cross-bill of her father and co-defendant. Tillar replied to the cross-bill, combating the theory of a loan and security, and contending that the transaction was a purchase in good faith by himself and a re-sale to Mrs. Cleveland at an advance.

The court found that the contract upon which the plaintiff sued was tainted with usury, and it therefore dismissed his bill.   But upon the cross-bill it proceeded to decree that Cleveland pay into court the principal sum, with interest at the rate of six per cent. per annum, that was admitted to be due; that this be paid over to Tillar, and thereupon the quit-claim executed by Tillar to Cleveland and tendered with the bill be delivered.

The most material inquiry is a question of fact:   Were the alleged contracts of purchase, and of resale a mere cover for a loan?   Our constitutional provision and statute against usury were never designed to interfere with the ordinary transactions of buying and selling, nor to regulate the amount of profit which might be legitimately made in the course of trading either upon lands or chattels.   But they do avoid all agreements for a greater profit in the nature of interest than is allowed by law for the loan of money or forbearance of a debt. This is illustrated by the case of *Ford v. Hancock, 36 Ark., 248,* where one who had agreed to lend another money at usurious interest to buy corn, afterwards sold him instead, corn on a credit at a price sufficiently above its cash value to cover the agreed interest.

There is a decided preponderance of testimony to support the conclusion arrived at by the court below.   A treaty for a loan had been pending between the parties.   Tillar had never seen the lot, although it was situate in the same town in which he was carrying on business.   He had no acquaintance with the owner, and it is doubtful whether he ever had an interview with him, although he thinks he held a conversation with him about the state of the title just prior to the consummation of the trade.   But his memory about the whole affair is quite indistinct.   In fact, he recollects nothing positively except that he was to make a profit of $90 by the transaction.   A profit upon what?   Evidently for the use of his money.   For the

designation of the installments, by which he was to be repaid, by the name of rents instead of purchase money, indicates that he considered the Clevelands as the real purchasers.

An objection was taken to the admission of parol evidence to prove the sale of the land to Cleveland and not to Tillar, because it seemed to contradict or vary the written contract. A wide latitude has always been indulged by the courts in the proof of circumstances tending to show that a security, apparently unobjectionable, is void for usury. It would be strange if, upon the trial of such an issue, a court could not hear proof of all matters which throw light upon the situation and conduct of the parties and the motives which influenced them. Chief Justice Marshall, in *Scott v. Lloyd, 9 Peters, 446,* speaking of the purchase of an annuity, or rent-charge, which was alleged to be a cloak for usury, uses this language:

" Yet it is apparent that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter. Courts, therefore, perceived the necessity for disregarding the form, and examining into the real nature, of the transaction. If that be in fact a loan, no shift or device will protect it."

In courts of equity it is permitted to show that an instrument, absolute on its face, was intended as a mortgage. This is in reality all that is done here.

The court correctly refused its assistance to Tillar in carrying out his illegal contract. Yet, as Cleveland sought affirmative relief, it was proper to impose the usual terms upon which chancery interferes in such cases, viz., that the borrower should pay what he justly owes after deducting the usurious interest. *1 Story Eq. Jur., sec. 301; Ruddell v. Amber, 18 Ark., 369; Pickett v. Merch. Natl. Bank, 32 Id., 346; Anthony v. Lawson, 34 Id., 628; Grider v. Driver, 46 Id., 50.*

It was an error, however, to decree that Tillar should convey to Cleveland, instead of the child. Mrs. Cleveland was, in

her lifetime, the equitable owner of the lot, and at her death her estate descended to her heir. The father could not, by any arrangement entered into with the holder of the legal title, appropriate the property of his minor child.

We do not commonly correct errors committed against parties who have not appealed. But the chancellor is the guardian of all infants, whose rights are drawn in question before him; and it is our duty to see that they are protected.

The decree is affirmed, with this modification—that the conveyance be made to Mrs. Cleveland's infant child; and for this purpose the cause is remanded. As the error was in no way prejudicial to Tillar, the modification will not affect the costs of this court, which must be adjudged against Tillar.