REEVE v. LADIES' BUILDING ASSOCIATION.

Opinion delivered June 11, 1892.

1. *Building associations—Usury.*

In a loan made by a building association to a shareholder, in the usual form, there can be no usury, because the rate of interest payable by him is contingent upon the length of time required to pay out his shares.

2. *Stock payments—Interest.*

A shareholder in a building association who procures a loan from it is not entitled to charge the association interest on his stock payments, nor to cause interest on the loan to cease running, from the time the payments are made, to the extent that they reduce the principal. All that he is entitled to receive is a share of the profits of the building association's dealings with the whole fund of subscriptions.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

*John B. Jones* for appellant.

1. The transaction is a mere loan of money, and is void for usury. 128 Ill. 70; 39 Pa. St. 137; 89 *id*. 15; 14 Lea, 677; 2 Col. 418; 21 Ga. 697; 69 Ala. 419; 19 W. Va. 776; *ib*. 784; 28 N. E. Rep. 801; 25 Oh. St. 215; 41 Md. 418; 24 Conn. 147; Endlich, Building Ass. secs. 331, 335, 356, 378, etc.; 68 Tex. 282; 12 Rich. Eq. 124; 3 Cr. 180; 55 Ia. 385; 75 N. C. 292; 10 S. W. Rep. 789; 7 Neb. 173, 181; 81 N. C. 58; 3 H. & J. (Md.), 109; Tyler on Usury, 289, 290; 34 Barb. 157; 41 Ark. 339; 33 Barb. 103; 81 Va. 677.

2.    Our statute provides that where partial payments are made interest shall be calculated to the time, and the payment deducted.

3.    Fines are illegal unless authorized by statute. Endlich, secs. 96, 405 ; 7 Neb. 173 ; *ib.* 181.

4. · The contract is usurious on its face ; the uncertainty as to the time the payments shall continue and the association be wound up, and the stock reach par value, does not validate it.    12 Rich. Eq. 124 ; 55 Ia. 424 ; Endlich, secs. 331, 335, 337, 355, 356, 378 ; 19 W. Va. 697–8 ; 7 Neb. 173 ; 81 N. C. 58.

*Blackwood & Williams* for appellee.

1.    Under the law there is no usury in these transactions.    10 Am. & Eng. Corp. Cases, 426 ; Endl. B. Ass. sec. 7, p. 386 ; 14 Lea (Tenn.), 677 ; 46 Ga. 166 ; 100 Ill. 420 ; 114 *id.* 182 ; 25 A. & E. Corp. Cases, 665 ; 13 Gray, 157 ; 6 Allen (Mass.), 1 ; 1 Allen, 100 ; 43 N. H. 197 ; 25 Barb. 263 ; 1 Abbott (N. Y.) App. Dec. 350 ; 22 Kas. 624 ; 62 Ind. 264 ; 10 Md. 397 ; 26 N. J. Eq. 351 ; 1 McAr. (D. C.) 385 ; 63 Ga. 373 ; 2 Beas. 427 ; Endlich, B. Ass. secs. 42, 326–7, 371 ; 35 Pa. St. 469 ; 10 Wright (Pa.) 495 ; 88 Pa. St. 216 ; 6 Bing. N. C. 334 ; 15 Eng. L. & Eq. 477 ; 8 *id.* 57 ; 31 Eng. Chy. (6 Hare) 87 ; 3 DeG. M. &. G. 1032.

2.    The contract is an entirety.    When a member borrows he must keep his contract and cannot call for an account of profits until the time mentioned in the contract.    Endlich, B. A. sec. 430 ; 63 Ga. 373 ; 97 Pa. St. 523 ; 6 Allen, 1 ; 77 Va. 293.

3.    The contract is not usurious on its face.    It only stipulates for 9 per cent.    25 Ark. 195.    Usury must be proved.    9 Pet. 378 ; 25 Ark. 260.

4.    The evidence shows that the interest does not exceed 10 per cent.    46 Ga. 166.

HUGHES, J.    This was a bill filed in Pulaski chancery court by appellant against appellee to cancel two mort-

gages given by appellant, one on block 152, City of Little Rock, to secure payment of dues, etc., on $1200 of stock, and the other on lots 10, 11 and 12, block 65, City of Little Rock, given by appellant to secure payment of dues, etc., on $7000 of stock in appellee's association, on the alleged ground that the transactions were usurious loans ; and asking judgment over against said association for all sums paid in on said transactions.

Are these contracts usurious ?

We do not deem it necessary to the determination of this question to decide whether these transactions were sales or redemptions of the shares of the appellant, or transactions in partnership funds, as they are held to be in many of the decisions of the courts of last resort.

1. As to usury in building associa- tion contracts.

The evidence shows that in each of these transactions there were two separate contracts.

First. The taking of shares in the association by the appellant and the contract to pay for the shares monthly as stipulated.

Second. The sale or transfer of the shares to the association, in consideration of the advance to the appellant of the value of his shares, in anticipation of their par value at the time when all the shares of all the members should be at par by reason of the accumulations of the association.

When this may be is uncertain, as it must depend upon the prosperity of the association. Whenever these shares are at par, the borrowing member ceases to make his monthly payment of dues, and interest on the advance made to him. What rate of interest he must pay is uncertain, and cannot be known until the final calcula- tion can be made. The amount he may pay the associa- tion may be far less, or it may be more, than the sum he receives with interest thereon at the rate of ten per cent per annum. There is then in the transaction an element of uncertainty, a hazard, that seems to exclude the idea

of a loan of money at a usurious rate of interest. "Where the promise to pay a sum above legal interest depends upon a contingency, and not upon the happening of a certain event, the loan is not usurious." *Spain* v. *Hamilton's Adm'r*, 1 Wall. 604; Tyler on Usury, p. 98; *Lloyd* v. *Scott*, 4 Pet. 205.

This principle is applied to contracts of insurance, of bottomry, to post-obits and annuities. Tyler on Usury, p. 175 *et seq.*: *Delano* v. *Wild*, 6 Allen, 1; *Bowker* v. *Loan Fund Ass'n*, 7 Allen, 100.

In *Parker* v. *Fulton Loan & Building Association*, 46 Ga. 166, the court said: "Even on the idea that he was borrowing the money, and was merely selling his interest in the dividend, it was wholly a matter of contingency whether he paid seven per cent, or more or less than that, for the money. This fact, this uncertainty or contingency, introduces into the transaction an element wholly foreign to an agreement to pay so much for the use of money."

The association does not know what it will get back, or what the borrower will eventually pay, as that depends entirely on how long it will take to reach the point of final winding up. *Id.*; *Bibb Co. Ass'n* v. *Richards*, 21 Ga. 592; *Shannon* v. *Dunn*, 43 N. H. 194; *Burns* v. *Metropolitan Building Ass'n*, 2 Mackey's Rep. 7.

There are expenses and losses incident to the business of these associations, which must be considered in estimating the value of the shares of the members before maturity. *Pattison* v. *Albany Building & Loan Ass'n*, 63 Ga. 373.

The testimony in this case shows that if the appellant had kept his contract, the interest he would have paid on the moneys he received from the association would have been in one of the transactions 7 3-16 per cent. per annum, and in the other 4 1-8 per cent.

It is contended by the counsel for appellant that the statutory rule for computing interest where partial payments are made is applicable to these transactions, and that the payments of monthly dues should bear interest, or cause interest to cease upon the principal, from the time they are made to the extent that they reduce the principal.   But "the member nowhere reserves the right to charge the association interest on his stock payments.   He has no claim as a member to such interest, and it cannot be assumed that, by incurring the additional obligations towards the association involved in the grant of an advancement, his previous rights in respect to it have become enlarged.   He continues liable on his original undertaking.   A borrower's claim to have these items taken into account and to be given credit therefor at any intermediate stage "has no foundation in law or equity."   "It must be remembered that he is in the first place a member, and only in the second place a borrower.   In the former capacity he has no right to an account of profits except upon the termination of the scheme."   "As for interest upon his several stock-payments, his contract with the building association, upon acceding to it, never contemplated such a thing.   No such stipulation, expressed or implied, ever entered into the bargain.   All he was entitled to, all he reserved to himself the right to claim, was a share of the profits of the building association's dealings with the whole fund of subscriptions."   Endlich, Building Ass'ns, sec. 456.

Where the contract, however, is for a mere loan of money, upon which a rate of interest greater than that allowed by law is exacted, no device, shift or cloak, whatever its form or how specious soever it may be, can protect it from the taint of usury.

The decree of the Pulaski Chancery Court is affirmed.