FARMERS' SAVINGS & BUILDING & LOAN ASSOCIATION *v.* FERGUSON.

Opinon delivered June 8, 1901.

1. CONFLICT OF LAWS—LOCI CONTRACTUS.—Where an undertaking secured by a mortgage was dated and made payable in Tennessee, though the mortgage conveyed land situated in this state, the contract is to be governed by the laws of Tennessee. (Page 355.)

2. SAME.—ENFORCEMENT OF USURY LAW OF ANOTHER STATE.—Mill. & V. Tenn. Code, §§ 2701, 2709, providing that the amount of compensation for the use of money "shall be at the rate of $6 for the use of $100 for one year, and every excess over that rate is usury," and that "a defendant sued for money may avoid the excess over legal interest by a plea setting forth the amount of the usury," are not inconsistent with the laws of this state, and contain nothing contrary to its policy. (Page 355.)

3. BUILDING AND LOAN ASSOCIATION—USURY.—A loan by a building and loan association is not usurious because, in addition to monthly interest charges at the highest lawful rate, monthly dues were likewise to be paid, which were to be applied to the maturing of the borrower's stock. (Page 356.)

4. SAME—COMPETITIVE BIDDING FOR STOCK.—Where there was no evidence that there was no competitive bidding for stock in a building and loan association, as required by its by-laws, other than defendant's statement that he never heard of it, it will be presumed that the by-laws were complied with until the contrary is shown. (Page 356.)

Appeal from Hempstead Chancery Court.

JOEL D. CONWAY, Judge.

Action by the Farmers' Savings & Building & Loan Association against M. L. Ferguson and another.

*J. W. House,* for appellant.

The contract is not usurious. Usury must be established by clear proof. 48 S. W. 903; 57 Ark. 251; 30 S. E. 463. Where the building association is a mutual one, and the stockholders participate in profits, the contract is not usurious. 26 Ia. 527; 20 S. E. 154; 29 S. E. 197; 2 McA. 594; 20 S. W. 386; 70 Miss. 94; 62 N. W. 544; 22 S. E. 585; 31 S. W. 1098; 23 S. W. 629; 22 S. E. 711; 30 Atl. 872; 15 S. W. 793; Fed. Cas. No. 7406. The contingent rate of interest, occasioned by the uncertainty of the time required to pay out shares, prevents such contracts from being usurious. 56 Ark. 335; 63 Ark. 502; 52 Fed. 618; 15 So. 369; 26 N. J. Eq. 251. See also, holding such contracts not usurious: 43 N. H. 194; 60 Minn. 422; 25 Barb. 263; 23 Gratt. 787; 46 Ga. 166; 79 Mo. 80. When the elements of mutuality and uncertainty enter into the contract, it is not usurious. Thompson, B. & L. Assns. 535-6, 540; Endlich, B. & L. Assns. § 339; Thornton & Black, B. & L. Assns. § 239. The contract is not usurious under the Tennessee law, where the note and mortgage are payable. 14 Lea, 671; 39 S. W. 546; 46 S. W. 362; 36 S. W. 386. A premium paid in excess of the legal rate of interest charged does not constitute usury. 15 So. 369; 46 S. W. 362; *id.* 386; Thompson, B. & L. Assns. 535-6; 14 Lea, 677. The contract is not usurious under Arkansas law. 52 Ark. 335; 62 Ark. 572; 63 Ark. 502; 52 Fed. 618. The presumption is that, if the contract was usurious under the Tennessee law, the contract was made with reference to the Arkansas law. 88 Fed. 7; 29 S. E. 744; 25 Oh. St. 413. But the contract was not usurious under Tennessee law, and this court is barred by the adjudications of the supreme court of that state upon the question. 105 U. S. 667; 7 Wall. 541; 107 U. S. 33; 94 U. S. 260; 98 U. S. 359; 118 U. S. 425; 125 U. S. 555; 134 U. S. 632; 142 U. S. 293; 119 U. S. 680; 150 U. S. 132; 146 U. S. 162; 67 Ark. 258; 60 Ark. 269; 66 Ark. 79; 48 S. W. 903; 44 Ark. 230; 47 Ark. 54; 61 Ark. 329; 3 Zabr. 590; 1 Pars. 180; 36 Am. Rep. 643; 142 U. S. 591. That the contract

was not usurious in Tennessee, see: 14 Lea, 677; 36 S. W. 386; 39 S. W. 546; 46 S. W. 362.

*W. C. Rodgers,* for appellees.

The contract was usurious. 12 Rich. Eq. 124; 78 Am. Dec. 463; 11 Bush, 296, 302. A usurious contract will not be upheld, under whatever name it is cloaked. 66 Ark. 460; 46 Ark. 50; 36 Atl. 248; 47 Ark. 288, 291; 55 Ark. 268, 270; 39 Pa. St. 156, 159; 24 Conn. 147, 153; 75 N. C. 292; 25 Oh. St. 208; 7 Neb. 173, 177, 178; 51 Pac. 779; 48 Ia. 385; 39 Pa. St. 137; 77 N. Car. 145; 78 N. Car. 186; 2 Coldw. 418; 12 Bush, 296; 30 Pa. St. 465; 55 Pac. 1022; 22 Tex. 128; 68 Tex. 283; 87 Tex. 486; 86 Tex. 467; 37 S. W. 212; 54 S. W. 209. The laws of Tennessee make usury a crime, and the contract, being usurious under the laws of that state, will not be enforced by the courts. 4 Mass. 370; 16 Mass. 91; 58 Ill. 172; 3 Bing. N. C. 230; 2 Lev. 174; 144 Ill. 422; 53 Ark. 147; 55 S. W. 840; 20 Ark. 209, 210; 3 East, 222; 56 Ark. 519; 32 Ark. 620; 12 Wall. 349; 21 Ind. App. 551; 35 Ark. 52. If there is any Tennessee statute allowing the rate of interest here charged, it should have been pleaded and proved. 13 Minn. 390, 393; 37 Mo. App. 352; 10 Ark. 169, 173; 66 Ark. 77; 121 Cal. 620; 171 Mass. 425; 19 Ind. App. 469; 2 Mass. 83, 90; 8 Mass. 9; 80 Ind. 186; 19 Mich. 187; 37 Fla. 64; 147 Pa. St. 399; 37 Mo. App. 352. The fact that the period of maturity of the stock is indefinite does not excuse usury. 50 S. W. 1070; 59 Minn. 468; 170 U. S. 351; 77 Fed. 32. Further, that the contract was usurious, see: 26 So. Rep. 361; 26 *ib.* 362; 15 S. C. 462; 12 Ky. 110; 45 Atl. 1001; 24 Conn. 147; 75 N. C. 292; 97 Ala. 417; 80 N. W. 45; 120 N. C. 286. Comity does not require us to execute the laws of another state, when they are against the policy of our own laws. 20 R. I. 466; 1 Pars. 180; 98 Ky. 41; 155 Ill. 617; 146 Ill. 472; 112 Mass. 349; 28 N. H. 379; 13 Pet. 519; L. R. 14 Ch. 351; 48 Md. 455; 12 Bush, 110; 50 S. W. 50; 55 S. W. 193; 43 S. W. 422; 26 Pa. St. 269.

BUNN, C. J. This is a bill to foreclose a mortgage on appellees' lands. The answer of the defendants sets up the defense of usury against the note sued on. Decree for defendants, and the plaintiff association appealed.

The obligation sued on is as follows, to-wit:

"$800.                    Nashville, Tenn., November 9, 1895.

"Due the Farmers' Savings and Building and Loan Association, at its home office at Nashville, Tennessee, eight hundred dol-

lars, with interest at the rate of 6 per cent. per annum payable on the 10th days of November and May. This obligation is ·for money advanced me on 12 shares of stock of said association owned by me, certificate being No. 8121, which said stock is hereby assigned and pledged for the repayment of said loan, and the same is further secured by a mortgage of even date herewith, executed by me upon a tract or parcel of land situated in Hempstead county, state of Arkansas. I agree to pay to said association, on the 10th days of November and May, at its home office in Nashville, Tennessee, sixty seven and 20-100 dollars ($67.20), which shall be applied as follows: (1) To the payment of any fines made against me in pursuance of the by-laws of the association; (2) to the payment of the interest due on said loan; (3) the balance shall be credited as dues on said stock. Said payments shall be continued until the dues so credited on said stock, together with the profits thereon, shall equal the amount loaned. Should I fail for 6 months to make said payments, then the whole amount of said loan shall, at the option of said association, at once become due and payable." This much of the obligation sued on is all that is necessary to be set forth here. Aside from fines, the contract of the appellee with the association was to pay interest in the sum borrowed at the rate of 6 per centum per annum, amounting to $48 per annum, and dues amounting to $144.40 per annum.

The contract sued on, having to be performed in the state of Tennessee, according to the tenor thereof is a Tennessee contract, and is to be governed by the laws of that state. *Sawyer* v. *Dickson,* 66 Ark. 77, and cases therein cited.

The defendants further contended that, as a Tennessee contract, it will not be enforced in this state, because they say the statutes of Tennessee on the subject of usury are criminal statutes, and that no state will enforce the criminal statutes of another state. The statutes of Tennessee herein sought to be enforced are neither criminal statutes, nor statutes inconsistent with the statutes of this state, nor do they contain anything contrary to the policy of this state. Sections 2701 and 2707, Milliken & V. Code Tenn. The statute which declares the receiving of usurious interest to be a crime, and punishable by fine equal to the excess over the lawful interest, is a very different thing, for it will be observed that the crime is the "receiving," and not the "contracting for," more than 6 per centum interest. Sections 5622 and 5623, *ib.*

Again, it is contended by the defendants that the interest really contracted for in this case is more than 6 per centum per annum, notwithstanding that is the rate named in the obligation; for they say the amount stipulated for and denominated "dues" is in fact nothing else than interest cloaked under the name of "dues;" and they say this amount, added, as it should be, to the interest, makes the interest in fact usurious. As these several amounts are stipulated to be paid by the investor or the borrower, who also must be a member of the association, it has been uniformly held by this court that those so-called "dues" will be considered separate from those called "interest;" that the contract rights of the parties will be so far respected that they will be permitted to create a sinking fund, as it were, in this way, separate and distinct from the fund to pay the interest; for that is the real object of the dues at last. Thus it is that both the principal and interest of the investment or loan are paid off just when the stock is matured. It is then redeemed from pledge. This time of redemption is uncertain, and thus makes it impossible to determine a question of usury, if such is a proper question to consider in that connection. The fund thus created by the payment of dues includes the profits of the business, which must be distributed *pro rata* among the stockholders after payment of expenses of the business, and it is always impossible to say beforehand what proportion will be profits, and what proportion is to be credited on the stock redemption. The charge of usury must be supported by some certainty and definiteness of proof. But these and kindred questions are settled by the ruling of this court in the case of *Reeves* v. *Ladies Building Association,* 56 Ark. 335, in which, quoting from the syllabus, it was said: "(1) In a loan made by a building and loan association to a shareholder, in the usual form, there can be no usury, because the rate of interest payable by him is contingent upon the length of time required to pay out his shares. (2) A shareholder in a building association who procures a loan from it is not entitled to charge the association interest on his stock payments, nor to cause interest on the loan to cease running, from the time the payments are made, to the extent that they reduce the principal. All that he is entitled to receive is a share of the profits of the building association's dealings with the whole fund of subscription."

There is no evidence that there was no competitive bidding for the stock. The only thing the defendant says for himself in that

connection is that he never knew of this bidding. The presumption is that the by-laws were complied with until the contrary is shown. His presence at the bidding was not necessary.

The decree is reversed, and the cause is remanded with directions to foreclose the mortgage.