HICKINGBOTHAM *v.* INDUSTRIAL FINANCE CORPORATION.

4-4212

Opinion delivered March 16, 1936.

*James Merritt,* for appellant.

*Coy M. Nixon* and *Sam M. Levine,* for appellee.

JOHNSON, C. J.   This action originated in a justice of the peace court in Desha County by Industrial Finance Corporation, appellee here, filing a note signed by appellant, R. C. Hickingbotham, upon which a balance of $40 was claimed as due.   The defense of usury was interposed and sustained by the justice and an appeal was prosecuted to the circuit court of Desha County, and upon trial before the court on the issues joined in the justice court it found no usury in the contract and rendered judgment accordingly from which this appeal comes.   The note, the foundation of the action, provides:

"$100                    Pine Bluff, Ark., June 10, 1930.

"For value received I promise to pay to the order of The Industrial Finance Corporation one hundred and 00/100 dollars, with interest from maturity until paid, payable at the office of the corporation, in Pine Bluff, Arkansas, in equal installments of $10 each on the 15th

day of each month, following the date of this note, until the whole amount of this note shall have been fully paid, being for the purchase of a four per cent. (4%) installment investment certificate of The Industrial Finance Corporation. Failure to pay any installment of this note, time being made the essence of this contract, shall entitle the payee herein to declare all instruments due, and he may proceed to collect same.

"The makers, indorsers, guarantors, and sureties of this note hereby severally waive presentment for payment, demand, protest, and notice of protest, and nonpayment. This note may be extended without notice and without affecting the liabilities of any of the parties hereto. If the makers should fail in business or should become bankrupt, or should have filed against them, or any of them, proceedings in involuntary bankruptcy or for the appointment of a receiver, this note, each installment thereon, and all other debts and obligations of the maker or makers, direct or contingent, shall immediately become due and payable. At the maturity of this note, or when otherwise due, as above provided any and all moneys, stocks, bonds, or other securities or property of any nature whatsoever on deposit with, or held by, or in the possession of said The Industrial Finance Corporation, as collateral or otherwise, to the credit or for account of the makers, indorsers, or other parties hereto, or any of them, shall be and stand applied forthwith to the payment of this note, or any other indebtedness due said The Industrial Finance Corporation by said parties, or any of them. If this note be not paid when due and it should be placed in the hands of any attorney-at-law for collection there shall be due attorneys' fees hereby fixed at 10 per cent.

"Witness my hand and seal.

"R. C. Hickingbotham (L. S.)"

On the reverse side of said note appears the indorsement:

"The undersigned hereby jointly, severally, and *in solido* guarantee to The Industrial Finance Corporation, its successors, indorsers, or assigns, the punctual payment of the within note; and having taken cognizance of

all its terms and conditions hereby assent thereto, and consent that the time of payment of said note may be extended without notice to or further assent of the undersigned or any of them who shall remain bound, notwithstanding such extension.

"W. H. Wagner, Engineer, McGehee.

"M. T. Hickingbotham, Engineer, McGehee."

The investment certificate which is described in the face of the note is as follows:

"Investment Certificate of The Industrial
Finance Corporation

"This is to certify, that R. C. Hickingbotham is the holder of this four per cent. (4%) investment certificate in the sum of one hundred and 00/100 dollars for which he agrees to pay the sum of $10 on the 15th day of each and every month hereafter until paid for in full. Time being the essence of said payments.

"The holder of this certificate shall be entitled to receive four per cent. (4%) interest per annum on each payment made on due dates.

"In order for the holder of this certificate to receive interest above specified, payments on said certificate must be made promptly on or before date due.

"When fully paid The Industrial Finance Corporation will pay to the holder hereof the face of this certificate with the said four per cent. (4%) interest in cash.

"Witness our hands and seal, this 10th day of June, 1930.

"The Industrial Finance Corporation.

"C. B. Smith, President.

"Attest: P. M. Kilroy, Secretary and Treasurer."

On the reverse side of this certificate appears the following indorsement:

"For value received, I hereby transfer and assign unto The Industrial Finance Corporation the within four per cent. (4%) investment certificate, as collateral security for my note of even date for $100, subject to the terms, conditions and provisions of said note.

"Witness my hand and seal, this 10th day of June, 1930. "Signed: R. C. Hickingbotham."

A collateral obligation by which the investment certificate heretofore set out was pledged was executed as follows:

"$100 Pine Bluff, Ark., June 10, 1930.

"For value received one year after date I jointly and severally promise to pay to the order of The Industrial Finance Corporation one hundred and 00/100 dollars, at its office in the city of Pine Bluff, Arkansas, with interest at the rate of eight per cent. (8%) per annum from maturity until paid.

"There has been deposited and pledged as collateral security for the payment of this note, or of any other liability or liabilities of the undersigned to the owner thereof, whether the same be now existing or hereafter contracted, now due or hereafter to become due, the following property, to-wit:

---

---

"And in addition thereto a four per cent. (4%) installment investment certificate of The Industrial Finance Corporation, same being marked installment investment certificate No. 11,014 and duly assigned to the Industrial Finance Corporation, and full power and authority is hereby granted to sell, assign, and deliver the whole or any part thereof, or any substitute therefor, or any addition thereto, at public or private sale, with the right to apply the proceeds to the discharge or partial discharge and payment or partial payment thereof.

"Any and all installments, together with accrued interest thereon, that may have been paid on the aforesaid investment certificate or any note or notes given to secure same or for which same is given as collateral security, all without putting in default, at option of the owner or holder of this note, declaring the total amount (all installments thereof) due, may be applied in total or partial payment of this note upon the non-performance of this promise or the nonpayment of any of the liabilities above named, at any time or times, without advertising or notice, which is hereby expressly waived.

"The owner or holder of this note may buy any of the above and aforesaid collateral at private sale with

or without notice, at the market price, and if there be
no market price, at a fair valuation, and the proceeds
of any sale shall be applied first to the payment of the
expenses of making such sale, together with a reason-
able attorney's fee if any attorney is employed or con-
sulted; second, the payment of the principal debt there-
by secured and the interest therein; third, to the pay-
ment of any other debt which the undersigned may now
or hereafter owe the owner or holder of this note, either
as principal, security, indorser or otherwise, and if any
surplus then remains same shall be paid to the under-
signed.

"The parties to this note, whether makers, indorsers,
guarantors, or sureties, hereby severally waive present-
ment for payment; demand, protest, and notice of protest,
and nonpayment.

"This note may be extended without notice and with-
out affecting the liabilities of any of the parties hereto.
If the maker or makers should fail in business or become
bankrupt or should have filed against them involuntary
proceedings in bankruptcy or proceedings for the ap-
pointment of a receiver, this note and all other debts,
obligations of the maker or makers, direct or contingent,
shall immediately become due and payable.

"The owner or holder of this note shall have the
right to require at any time a greater number, or more
satisfactory sureties, indorsers or guarantors. The fail-
ure of the maker to comply with a request for such fur-
ther security, shall cause this note and all other debts
and obligations of the maker or makers to immediately
become due and payable.

"At the maturity of this note, or when otherwise
due, as above provided, any and all moneys, stocks, bonds,
or other securities of property of any nature whatsoever
on deposit with or held by, or in the possession of said
holder as collateral or otherwise, to the credit or for
the account of the makers, indorsers, or other parties
hereto, or any of them, shall be and stand applied forth-
with to the payment of this note, or any other indebted-
ness due said holder by said parties or any of them. If
this note be not paid when due and it should be placed
in the hands of an attorney for collection, there shall be

due attorneys' fees hereby fixed at ten per cent. (10%) of principal and interest due.

"Time is expressly made the essence of this contract. Witness my hand and seal this day above stated.

"R. C. Hickingbotham (L. S.)
"W. H. Wagner (L. S.)
"M. T. Hickingbotham (L. S.)"

Testimony was adduced by appellant which tended to show that all the instruments heretofore set out constituted one obligation while that on behalf of appellee tended to show that the two notes were separate and distinct obligations.

Appellant's first contention for reversal is that the trial court erred in permitting appellee to introduce as a witness N. J. Gantt, president of appellee company, after both parties had announced the closing of testimony.

We have repeatedly held the admission of further testimony after closing is within the sound discretion of trial courts. *Moss* v. *Adams,* 32 Ark. 562; *Evans* v. *Rudy,* 34 Ark. 383; *Lowenstein* v. *Finney,* 54 Ark. 124, 15 S. W. 153; *Bynum* v. *Brady,* 82 Ark. 603, 100 S. W. 66, and we are unwilling to impair our previous opinions in this regard or to say that the trial court abused his discretion in admitting the testimony of Mr. Gantt.

Since the trial court has determined ambiguity in the transactions between appellant and appellee, and this at the express invitation of appellant by offering testimony in reference to the singleness of the obligations, and since it has found from conflicting testimony that the notes were separate and distinct obligations, it follows that we must dispose of the case with this finding of fact in mind.

The finding of fact last referred to brings this case squarely within the doctrine announced by us in *Simpson* v. *Smith Savings Society,* 178 Ark. 921, 12 S. W. (2d) 890, wherein we had under consideration a series of transactions not materially different from the transactions herein considered, and held first that the several instruments were separate and distinct obligations, and, secondly, when thus viewed and construed did not sepa-

rately disclose usury. Even so here. The obligation first set out was executed as the purchase price of the investment certificate, and, had appellant performed his part of the contract by paying all the monthly installments, he would have owned outright the certificate which in turn would have automatically paid off his collateral obligation.

Contractual obligations analogous to this one have been approved by us many times, and the doctrine is in line with the great weight of American authority. *Reeve* v. *Ladies' Bldg. Ass'n,* 56 Ark. 335, 19 S. W. 917; *Taylor* v. *Van Buren Bldg. Ass'n,* 56 Ark. 340, 19 S. W. 918; *Black* v. *Thompkins,* 63 Ark. 502, 39 S. W. 553; *Farmers' Saving & Bldg. & Loan Ass'n* v. *Ferguson,* 69 Ark. 352, 63 S. W. 797; *Bell* v. *Southern Home Bldg. & Loan Ass'n,* 140 Ala. 371, 37 So. 237; 27 R. C. L. 210; *Citizens' Bank* v. *Murphy,* 83 Ark. 31, 102 S. W. 697; *Cockle* v. *Flac,* 93 U. S. 344, 23 L. ed. 949, and *Union Central Life Ins. Co.* v. *Hilliard,* 63 Ohio St. 478, 59 N. E. 230, 53 L. R. A. 462.

The collateral obligation executed by appellant is demonstrably not usurious. It matures one year after date and the obligee deducted 10 per cent. interest in advance. This is authorized by § 7355, Crawford & Moses' Digest, and we have many times approved its consequences. *Bank of Newport* v. *Cook,* 60 Ark. 288, 30 S. W. 35; *Vahlberg* v. *Keaton,* 51 Ark. 534, 11 S. W. 878; *Beard* v. *Millwood,* 51 Ark. 548, 11 S. W. 881.

No error appearing, the judgment is affirmed.