Wood *et ux. v.* Essary *et al.*

(Division B. Nov. 9, 1936. Suggestion of Error Overruled Dec. 7, 1936.)

[170 So. 543. No. 32382.]

**G. C. Mooreland,** of Corinth, and **Jas. A. Cunningham,** of Booneville, for appellants.

**W. C. Sweat,** of Corinth, for appellees.

136

Argued orally by **Jas. A. Cunningham**, for appellants, and by **W. C. Sweat,** for appellees.

**Griffith, J.**, delivered the opinion of the court.

The facts construed in the light of the findings by the chancellor are as follows:

Appellants, Wood and wife, owned and occupied a farm which had been mortgaged to the Corinth Bank & Trust Company for five thousand dollars. In 1932 this mortgage was foreclosed by the bank and the land was bought in by the bank, or by an agent for its use, for three thousand dollars, which amount was credited on the mortgage note. Wood and wife thereafter continued to remain in the occupancy of the property, paying therefor a small annual rental. In October, 1934, Mr. Wood, having learned that the bank desired to sell the land for one thousand dollars, approached the manager of the bank and inquired whether the bank would convey the land to him by quitclaim for that amount in spot cash and would also include in the transaction, upon the payment of the amount in cash aforesaid, all demands which the bank held against him of any character, including whatever balance, with interest, which remained unpaid of the original five thousand dollar note. The bank agreed with Wood to do this, and Wood went to the appellee Essary and applied for a loan from Essary for the one thousand dollars required to consummate the said trade with the bank. Essary replied, in substance, that he would not loan money straight out on the property, but that, if he himself could buy the property from the bank, together with Wood's obligations to the bank, he would do so for the one thousand dollars and would thereupon immediately sell it to Wood for one thousand two hundred dollars, taking a mortgage for that amount, payable in ninety days. Wood complained of the high charge of two hundred dollars, but finally agreed to accept.

Essary thereupon went to the bank to ascertain whether he might be able to buy the land and the said obligations

for less than the one thousand dollars, but was informed that it could not be done. Since the deed from the bank was to be a quitclaim, it was necessary to raise the past-due taxes on the property; and, when Wood requested Essary to include in the amount to be advanced a sufficient additional sum to cover the taxes, Essary replied that he could not put in the place in excess of one thousand one hundred dollars. Upon a joint investigation at the court-house by Wood and Essary, it was found that the principal amount of the taxes was eighty dollars and forty-six cents, not including damages and interest, and Essary agreed to furnish that amount plus the one thousand dollars; and Wood, on his own part, settled with the clerk for the damages and interest.

The matter of the taxes having been settled, Wood and Essary went to the bank, with the announcement that they were ready to conclude the transaction with the bank. The bank manager requested to know whether the deed should be made to Wood or whether to Essary; and to save expense of a deed to Essary, to be followed immediately by a deed from Essary to Wood, it was agreed that the deed should be made to Wood, which was done. Wood and wife thereupon executed a note and deed of trust to Essary for one thousand two hundred eighty dollars and forty-five cents, payable ninety-five days after date, with six per cent. per annum interest from date.

At the same time when the parties were in the bank, and as a part of the same transaction, Essary inquired of the bank whether the original note of Wood to the bank was available, and as to any other papers that were to go out of the bank as a part of the trade, to which the bank replied that there were, but that such papers were no longer of any value except to Wood; because, under the terms of the trade with Wood, these were to belong to Wood, to which Essary replied in effect, as in substance was admitted by him in his testimony, that

he so understood, but that Wood had in mind a loan from the Federal Land Bank and that these papers were needed as evidence that all Wood's indebtedness had been canceled, for which reason, he (Essary) desired these papers to be delivered and assigned to him; and with that understanding the bank made the delivery and assignment as requested. What papers were here involved other than the original five thousand dollar note we are unable to definitely tell from the record, there being confusion and a remarkable uncertainty in that respect, not only as to what these papers were, but as to the amounts which they represented, or whether for any substantial amounts, so far as concerns the issue in this case. But whatever they were, is immaterial in the view we take of this matter. They were held by Essary as a mere trustee for Wood under the circumstances of the case.

The question for decision is whether the facts disclose a bona fide sale from Essary to Wood, or a mere shift for usury. We are of opinion that the latter is the case. A leading authority in point is Tillar v. Cleveland, 47 Ark. 287, 1 S. W. 516. In that case Cleveland had made a parol bargain with the owner for the purchase of a lot upon which stood an unfinished dwelling. The price of the lot was one hundred fifty dollars, and it was estimated that one hundred twenty dollars would be required to complete the house. Cleveland applied to Tillar to borrow the needed two hundred seventy dollars, but Tillar stated to him that his money was worth more than the highest legal rate, but that he would advance the money for the purchase and improvement, taking title in himself, and would make a written contract to convey the property to Cleveland upon the payment within one year of a total of three hundred sixty dollars in twelve monthly installments of thirty dollars each. This arrangement was accepted by Cleveland, and the court held that it was a disguise or device to cover up

usury. A similar case is Ferguson v. Sutphen, 3 Gilman (8 Ill.) 547, used as an illustration in Webb on Usury, p. 76, sec. 67, and p. 228, sec. 204. Other cases are collected in the opinion Ringer v. Virgin Timber Co. (D. C.) 213 Fed. 1001.

Here Wood was in possession of the property; it had originally belonged to him; he had made the trade with the bank to get the property back, together with a surrender by the bank of all his obligations to the bank, all for one thousand dollars; and the bank manager testified, without contradiction, that after making the trade with Wood he would not have sold or transferred it to any one else. What Essary did was inseparably connected and bound up in the trade which Wood had made; the transaction was so intimately connected as a mere consummation of the trade by Wood with the bank that the deed was made direct to Wood to avoid the idleness of the mere form of a deed to Essary and by him to Wood, for if it had been done otherwise it would have been only a form; and it was but a form that the old note and some other papers above mentioned were transferred to Essary. If a transaction such as seen in this case may be used to cover up usury under the guise of a profit in a sale, the statute on usury may as well be amended by providing that it shall have no application to money borrowed to purchase real, or tangible personal, property.

Appellee having contracted to receive more than twenty per cent. of the sum loaned, the entire amount, principal and interest, stands forfeited; and we must enter decree here for appellants to that effect.

Reversed and decree here for appellants.