O'BRIEN *v.* ATLAS FINANCE COMPANY.

5-282                                                    264 S. W. 2d 839

Opinion delivered February 22, 1954.

*Bailey & Warren,* for appellant.

*U. A. Gentry,* for appellee.

*Coleman, Gantt & Ramsey; Rose, Meek, House, Barron & Nash; John H. Cottrell, Jr., Talbot Field; House, Moses & Holmes* and *Thomas C. Trimble, Jr., Amici Curiae.*

ROBINSON, J. The question is whether a usurious rate of interest was charged for a loan of money. Appellant, Arthur H. O'Brien, filed suit in Pulaski Chancery Court alleging that on the 2nd day of March, 1952, he applied to appellee, Atlas Finance Company, for a loan of $100; that the finance company agreed to make the loan but required him to execute his note in the sum of $114.04 due one year from date, and to secure the note by a chattel mortgage on a Plymouth automobile; in addition he was required to purchase a savings or investment certificate bearing interest at the rate of 2% per annum issued by the finance company in the sum of $114.04 and he was to pay for this certificate in 12 equal monthly installments; that as a matter of fact he did not want to purchase a savings certificate or make an investment in defendant's company, but only desired a loan of money; and the requirement of the loan company that he purchase an investment certificate was a mere cloak to cover a usurious loan. O'Brien alleged that the interest exacted of him amounted to usury and asks that the note and mortgage be cancelled. On a hearing the Chancellor held the loan was not usurious, and O'Brien has appealed.

No one contends the loan would not be usurious if no investment certificate had been issued, and the agreed monthly installments were made in repayment of the

loan. The evidence is convincing that in dealing with the loan company, O'Brien's sole purpose was to obtain a loan of $100 to enable him to purchase a television set, and the evidence is equally clear that appellee, Atlas Finance Company, is in the money-lending business. The sale of the investment certificate to O'Brien was merely a part of the loan transaction; the effect was to enable the loan company to collect from O'Brien monthly installments in repayment of the loan without crediting such payments to the loan; thus it would appear that O'Brien had the use of the $100 for the full 12-month period when as a matter of fact he had the use of the whole $100 for only one month. If this transaction is not usurious, then any transaction can be dressed up so as not to constitute usury although it would be clear that it was merely a scheme to evade the usury laws.

In *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973, the court quoted from *Tillar* v. *Cleveland,* 47 Ark. 287, 1 S. W. 516, as follows: "Yet it is apparent that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter. Courts, therefore, perceived the necessity for disregarding the form, and examining into the real nature, of the transaction. If that be in fact a loan, no shift or device will protect it."

In *Winston* v. *Personal Finance Co. of Pine Bluff,* 220 Ark. 580, 249 S. W. 2d 315, we quoted from *German Bank* v. *DeShon,* 41 Ark. 331, as follows: "The 13th section of Article 19 of the Constitution of this State declares that '*all contracts* for a greater rate of interest than ten per centum per annum shall be void as to principal and interest.' This section is clear and unambiguous. With the wisdom and policy of it the courts have nothing to do. It is their duty to carry it into effect according to its true intent, to be gathered from its own words, without regard to the hardships incident to the faithful execution of such laws."

In the *Winston* case it was further reiterated that investment certificates or stock certificates could not be

used as a cloak for usury, and that transactions in any guise whatever, which are contrary to the Constitution, are null and void.

Appellee places great reliance on the cases of *Simpson* v. *Smith Savings Society,* 178 Ark. 921, 12 S. W. 2d 890, and *Hickingbotham* v. *Industrial Finance Corp.,* 192 Ark. 429, 91 S. W. 2d 1023. We agree that both cases are in point and justify the loan company in using the plan here involved. In each of these two cases we held the loan and purchase of the certificate were, in legal contemplation, two separate transactions; but further study and observation now convince us that the loan and the purchase is only one transaction, and that the result is usurious. Many people, however, have dealt on the strength of the two aforesaid holdings which have become a rule of property and must not be overruled retrospectively. While the language in *Commercial Credit Plan* v. *Chandler,* 218 Ark. 966, 239 S. W. 2d 1009, might have been considered as casting a doubt on the *Simpson* case and the *Hickingbotham* case, nevertheless the *Simpson* case was subsequently cited in *Winston* v. *Personal Finance Co., supra.*

Therefore in the case at bar we are confronted with the same kind of situation that confronted us in *Hare* v. *General Contract Purchase Corp., supra* . . . that is, we cannot overrule retrospectively the holding in cases directly in point which have become a rule of property; so we affirm the judgment in the case at bar, but we hereby give the public this caveat.

In any transaction entered into after the date of this opinion we will consider a course of dealings like that in the *Simpson* case, the *Hickingbotham* case, and the case at bar to be *one transaction,* and we will test it by the constitutional mandate against usury.

The caveat in the *Hare* case was not broad enough to apply to a transaction like the one in the case at bar; but the present caveat is to apply to all kinds of loans. However, we do not mean to impair our cases such as *Reeve* v. *Ladies' Bldg. Assoc.,* 56 Ark. 335, 19 S. W. 917,

18 L. R. A. 129; *Black* v. *Tompkins,* 63 Ark. 502, 39 S. W. 553; and *Farmers' Savings & Bldg. & Loan Assoc.* v. *Ferguson,* 69 Ark. 352, 63 S. W. 797, holding that loans made by true building and loan associations are not usurious; but there is a vast difference between the plan used by appellee and that of building and loan associations, although the plans are similar in form.

The judgment is affirmed with the caveat as above stated.

Justice GEORGE ROSE SMITH not participating.

GRIFFIN SMITH, Chief Justice, dissenting. In administrative affairs and national legislation we have experienced the New Deal, the Fair Deal, and a prolonged discussion of their merits as distinguished from conservatism. We have the Right Wing, the Left Wing, the Middle-of-the-Roaders, and the Neutrals; but judicially it had long been supposed that the common law processes as modified by statutes preserved the past, protected the present, and were unfailing guardians of the foreseeable future.

Such familiar terms as mandamus, prohibition, certiorari, injunction, supersedeas, quo warranto, writ of error, and habeas corpus are to be found in Art. 7, § 4 of the Constitution. But I have searched in vain for any authority—either constitutional, statutory, implied, fringe-fraught, or suspected—other than the General Amnesty Act of May 26, 1952 (officially referred to as *Hare* v. *General Contract Purchase Corporation,* 220 Ark. 601, 249 S. W. 2d 973), whereby the fundamental law may be suspended, extended, or modified through utilization of the delightfully convenient judicial sedative spoken of as a *caveat.*

We now have Caveat No. 1 and Caveat No. 2. What succeeding directives of convenience will deal with cannot, of course, be now determined. We must wait until the particular point of constitutional penetration is indicated before adjusting the natural offsprings of *Caveat No. 1* and *Caveat No. 2* to their appropriate roles. The

thing to be remembered is that what cannot be reached by law and equity is attainable by the *caveat*.

I would reverse the decree and reaffirm some semblance of allegiance to the wisdom of those gentlemen who in convention at Little Rock September 7, 1874, subscribed to those basic principles so many liberty-loving people still hold dear.