FLOYD *v.* RICHMOND.

4-8074                                          199 S. W. 2d 754

Opinion delivered February 24, 1947.

178

*Rains & Rains,* for appellant.

*Batchelor & Batchelor* and *Creekmore & Robinson,* for appellee.

HOLT, J. July 20, 1946, appellees brought this action against appellant to recover alleged compensatory and punitive damages for cutting down a number of cedar trees on their land.

They alleged in their complaint that appellant went on land which they owned and cut down and destroyed twenty cedar trees without permission or authority and that appellant knew that the land and trees were the property of appellees. They further alleged "that prior to the cutting of the said cedar trees the property was exceptionally suitable and desirable for building sites, but the cutting and destruction of said trees reduced and diminished the value of the property, and that because

of the willful and unlawful acts of the defendant in going upon the property of the plaintiffs and cutting and destroying the growing trees thereon, the plaintiffs have been damaged in the sum of $1,000,'' and prayed for compensatory damages accordingly. They further alleged that appellant, in cutting the trees, did so willfully and maliciously and prayed for punitive damages in the amount of $1,000.

Appellant answered with a general denial. A jury awarded appellees $200 for compensatory damages, but denied their prayer for punitive damages.

This appeal followed.

At the outset, we are met with appellees' contention that the bill of exceptions was not filed in time and should not be considered here as a part of the record. While a decision of this question is not required in view of our conclusions, since it appears to be of first impression, and due to its importance we proceed to dispose of this issue. The answer must depend upon our construction of Act 10 of 1943, amending § 1543 of Pope's Digest.

Section 2832, Pope's Digest, provides that the Crawford Circuit Court shall convene in regular term on the first Monday in July and again on the first Monday in November. Judgment in the present case was had March 29, 1946, on an adjourned day of the regular November, 1945, term, and appellant was allowed 120 days to prepare and file a bill of exceptions. The regular July, 1946, term convened on July 1, and on August 24, 1946, an adjourned day of the July, 1946, term, and after the 120 days originally granted by the court had expired, but before the expiration of the time for appeal to this court, the trial court granted appellant 45 days in addition to the original 120 days within which to file bill of exceptions and appellant duly filed his bill of exceptions within this extended time.

In these circumstances, appellees say: ''It is the contention of the appellees that Act No. 10 of the Acts of Arkansas for 1943, which amends § 1543 of Pope's Digest of the Statutes of Arkansas, applies only to the granting

of an extension of time for filing a bill of exceptions during the same term of court, and has no application where the term of court at which the original time was granted has expired and a new term has been convened by which the court loses jurisdiction of its judgments rendered in the previous term of court.''

We think appellees wrong in this contention.

Section 1543 of Pope's Digest, prior to the amendment by Act 10 of 1943, provided: ''The party objecting to the decision must except at the time the decision is made, and time may be given to reduce the exception to writing, *but not beyond the succeeding term,* but the parties may agree that exceptions to all decisions made during the trial are saved without being especially mentioned at the time the decision is made.'' As amended, it now reads: ''Section 1543: The party objecting to the decision must except at the time the decision is made. The judge who presided at the trial, or if he shall die or become incapacitated his successor in office, may give or extend time to reduce the exceptions to writing, and this may be done by the judge in vacation as well as in court, and may be done after as well as before the expiration of any time previously given. The parties may agree that exceptions to decisions made during the trial are saved without being especially mentioned at the time the decision is made.''

''Section 2. Nothing in this Act shall be construed to repeal or amend any provision of law fixing the time for an appeal nor fixing the time within which the record on appeal must be filed in the Supreme Court.''

Until this amendment became effective, appellees' contention found support in our decisions. (*Carroll* v. *Sanders,* 38 Ark. 216, and *Fernwood Mining Company* v. *Pluna,* 136 Ark. 107, 205 S. W. 822.)

It will be observed that before § 1543 was amended, it contained this specific provision: ''Time may be given to reduce the exception to writing, but not beyond the succeeding term.'' As amended, the words ''but not beyond the succeeding term'' were eliminated and it now

provides that the court "may give or extend time to reduce the exceptions to writing . . . in vacation as well as in court, and . . . after as well as before the expiration of any time previously given," provided that the extra time given may not extend beyond the period allowed for appeal to this court. We think it obvious that the Legislature clearly intended, by this amendment, to give the court the power to grant or extend the time to file a bill of exceptions, in vacation as well as in term, and after as well as before the expiration of time previously given, provided the extension does not extend beyond the time for appeal, unhampered by an intervening regular term of court, so that it now has the power to grant the extension regardless of the intervening regular term, and we so hold.

Coming now to the merits of the case, it appears that appellees (plaintiffs below) based their right to recover primarily on the reduced value of their real property resulting from the severance of the trees and not for the value of the trees in their detached form, and tried the case on this theory.

The evidence was to the following effect: Appellant testified: "Q. This old wire that you spoke of, is that where the fence was when you went out there? A. That is right, because they shaded my trees in the evening. . . . Q. You didn't say anything at that time (when the road was put in) about having a strip on the west side of that road? A. I didn't know it. Q. In this 45 years that they had the property you didn't claim a bit of it? A. That's right. Q. You considered (the fence) as your west line as it runs along the apple orchard? A. We used it as that. . . . Q. Claude, at the time that you cut these trees, you hadn't at that time claimed any right to the land (west of the fence)? A. No, sir. Q. You had never claimed that you owned that property at the time you cut them? A. No, sir. . . . Q. You just walked over there and cut them? A. Yes, sir. . . . During the eight years that you lived there, you did consider that (fence) the line? A. We did use that for the line. Q. And you accepted it as such? A. We never had any

objections to each other. Q. You did consider it the line?
A. Yes, sir.''

There was other testimony that the land belonged to appellees and they had claimed it adversely and it was under fence for a period far beyond seven years. It was about three miles from Van Buren, one quarter of a mile from highway 59, and on the main route through Dora, the Pump Station, Greenwood Junction and Moffit, Okla. Approximately twenty-two cedar trees, some of them sixteen to eighteen inches in diameter, were cut by appellant on the east side of forty acres owned by appellees. Appellant had built his own home about 150 yards east of the trees here in question. From pictures and other evidence the land on which these cedars stood was on an elevation and desirable as building sites. There was testimony that the land had been damaged from $500 to $700 by the severance of the trees by appellant and that the difference in value of the land before the trees were cut down and immediately thereafter, was from $500 to $700.

Appellant has assigned twenty-one alleged errors in his motion for a new trial, and those which he argues here are presented in separate groups. We consider them as presented.

### (1-2-3-4 and 21)

Under these assignments, appellant questions the sufficiency of the evidence. When the above and all the testimony is considered in the light most favorable to the jury's verdict, and to appellees, as we are required to do, we think it substantial, and ample, to warrant the jury in finding, as they must have, that appellant, without permission or right, went upon land belonging to appellees, and cut down trees belonging to appellees to their damage in the amount awarded.

On the measure of damages in a case of this kind, the rule announced in *Laser* v. *Jones*, 116 Ark. 206, applies. In that case action for damages was brought under § 7976 of Kirby's Digest, now § 1299 of Pope's Digest, and it was there said: ''What is the measure of damages

against one who willfully destroys shade trees growing and being on the lands of another?

"In the case of *Fogel* v. *Butler,* 96 Ark. 87, 131 S. W. 211, it was said that the word value, as here employed, meant market value. The term 'market value' is one which has been defined, in its various applications, in many decisions. A number of these definitions are given in Words and Phrases, under that title, and among others so given are the following:

" 'In estimating the market value of property, all capabilities of the property and all uses to which it may be applied are to be considered. *Seaboard Air Line Ry.* v. *Chamblin,* 108 Va. 42, 60 S. E. 727.'

" 'The "market value of property" is its value for any use to which it may be adapted, and in estimating its value all the uses of which the property is susceptible should be considered, and not merely the condition in which it may be at the time and the use to which it may have been put by the owner. In re *Westlake Ave.,* 40 Wash. 144, 82 Pac. 279, (quoting and adopting the definition in *Seattle & M. R. Co.* v. *Murphine,* 30 Pac. 720, 4 Wash. 448).'

"The statute refers to 'any tree placed or growing for use or shade,' and this language indicates the intention of the Legislature to permit the jury to consider the use to which any tree was adapted in assessing the damages for its destruction. It is a matter of common knowledge that there are many trees which have but little value, except for shade; yet such trees would add greatly to the value of any property where shade was desired.

"(2) It is, therefore, proper to consider the use which may be, and is, made of the tree, and if the tree adds to the value of the land, while its destruction detracts from its value, then this difference in value is the measure of the recovery, even against one who, without malice, destroys it."

So here, it was proper to consider the use which may be made of these cedar trees, such as their value for

shade, ornamental purposes, and for building sites, and if these trees added to the value of the land in any way, and if their destruction detracted from that value, then as said in *Laser* v. *Jones, supra,* "this difference in value is the measure of the recovery, even against one who, without malice, destroys it."

(8-9-13)

Appellant also argues that any testimony tending to show that the value of the property was reduced for building sites by severance of the trees was incompetent. We cannot agree. What we have said above answers this contention.

(4-10-19)

Appellant next contends "that there was nothing in the record whatever to warrant the submission to jury of the question of punitive damages, and that in so doing the learned trial court gravely prejudiced this appellant and committed reversible error." We think this contention untenable for the reason that, as has been indicated, there was evidence from which the jury might have found that there was an element of willfulness in appellant's action in severing the trees and this warranted instructions on this issue. "To justify an award for punitive damages there must be malice, express or implied, or some element of willfulness or wantonness." *Missouri Pacific Railroad Company* v. *Yancey,* 178 Ark. 147, 10 S. W. 2d 22. The instructions which the court gave on this point correctly declared the law, and certainly since the jury returned a verdict in appellant's favor on this issue, he could not have been prejudiced.

Appellant next complains about an instruction given by the court on its own motion which appellant says contradicts itself. It appears from the record that other instructions properly declaring the law had already been given and this instruction was in effect repetition. In any event, it appears from the record that appellant made no general or specific objection to this instruction and we are unable to find an assignment of this alleged

error in appellant's motion for a new trial. Appellant is therefore not in position to complain.

(6-7-11)

Finally appellant says: "Were the trees on appellees' land?" This was a disputed question of fact for the jury to determine under proper instructions, which the court gave.

On the whole case we find no error, and accordingly the judgment is affirmed.