PUBLIC LOAN CORPORATION OF FAYETTEVILLE *v.* PETERSON.

5-437                                271 S. W. 2d 353

Opinion delivered October 4, 1954.

*Wade & McAllister,* for appellant.

GEORGE ROSE SMITH, J.   This is a suit brought by the appellees to cancel a promissory note and chattel mortgage for usury.   The chancellor, upon the authority of *Strickler* v. *State Auto Finance Co.,* 220 Ark. 565, 249 S. W. 2d 307, and *Winston* v. *Personal Finance Co.,* 220 Ark. 580, 249 S. W. 2d 315, granted the relief sought.   The appellant now contends that the doctrine of those cases cannot be applied to loans made prior to May 19, 1952— the date of those opinions.

When the loan now in question was made, on March 8, 1952, the appellant was operating its business under the purported authority of the Arkansas Installment Loan Law, Act 203 of 1951.   That law, to the extent that it undertook to authorize the exaction of illegal interest under the guise of a service charge, was held to be unconstitutional in the *Strickler* and *Winston* cases.   Act 203 was later repealed by Act 391 of 1953.

In the case at bar Mr. and Mrs. Peterson executed a note for $630, payable in eighteen equal monthly installments, but they received only $513.75 from the lender. Included in the amounts withheld by the lender were insurance charges, an interest discount of $47.25, and a service charge of $31.20.   The service charge was not based upon the cost of services actually rendered to the Petersons, for the only expense that the appellant's manager could positively identify was an item of sixty-five

cents paid for a credit report. Instead, the service charge was fixed by reference to a table which graduated the charge according to the size of the loan. Here the service charge of $31.20 seems to have been the maximum allowed by § 27 of Act 203, being 5% of the first $600 and 4% of the remaining $30.

The appellant does not deny that its note is usurious under the rule applied in the *Strickler* and *Winston* cases. It argues, however, that Act 203 had not yet been declared invalid when the Petersons obtained the loan and that prior transactions are protected by the due process and contract clauses of the State and Federal constitutions.

We find no merit in this somewhat novel argument. It is true that we gave prospective effect alone to our decision in *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973, now cited by the appellant. But there we overruled several earlier decisions which had sanctioned an artificial distinction between a cash sale and a credit sale. Inasmuch as the finance company in the *Hare* case, and others similarly situated, had presumably relied upon our prior cases in making their loans we were unwilling to give a retroactive effect to our ruling, even though we were at liberty to do so. See the opinion on rehearing in *Crisco* v. *Murdock Acceptance Corp.*, 222 Ark. 127, 258 S. W. 2d 551, cert. den. 346 U. S. 910, 74 S. Ct. 239.

There is scant similarity between the peculiar circumstances of the *Hare* case and the routine question now before us. Since 1874 the constitution has forbidden an interest rate in excess of ten per cent per annum. No decision of this court has ever approved an evasion of the constitution through the device of a service charge which represents at most merely a part of the lender's overhead cost of doing business. Obviously such a holding would destroy the constitutional prohibition against usury. Yet that device was ostensibly authorized by Act 203. In holding that law partly invalid we did not, as we did in the *Hare* decision, depart in the slightest degree from existing precedents. If this appellant, in the face

of the plain language of the constitution, chose to act upon the assumption that Act 203 would eventually be upheld, it did so at its peril. We perceive in its present predicament none of the equitable considerations that led to our course of action in the *Hare* case.

Affirmed.