WEST *v.* SMITH.

5-633                                             278 S. W. 2d 126

Opinion delivered February 28, 1955.

[Supplemental Opinion on Rehearing Delivered April 18, 1955.]

*Melvin E. Mayfield*, for appellant.

*Spencer & Spencer*, for appellee.

ED. F. McFADDIN, Justice. This case was docketed under our Rule 5 (as contained in the Rules promulgated

January, 1954), so that the appellant could file a motion for a rule on the Clerk of this Court, who had declined to accept the record because he considered it was tendered too late. Since the question here presented arises under Act No. 555 of 1953, we are delivering this opinion as a precedent for future cases.

The tendered record shows the following:

(1) That the Circuit Court judgment was rendered July 15, 1954.

(2) That appellant's[1] notice of appeal (under § 2 of said Act 555) was filed on August 13, 1954.

(3) That neither side applied to the Circuit Court for an extension of time to file the record, until November 15, 1954 when appellant filed a motion in the Trial Court for extension of the time to file the record (see § 20 of the said Act 555).

(4) That on November 18, 1954, the Trial Court made an order giving the appellant 20 additional days (from that date) in which to file the record; but this order of extension was made more than 90 days after the filing of the notice of appeal and was not made within the period extended by any previous order.

(5) That the record was filed in the Trial Court on November 22, 1954 and tendered in this Court on December 2, 1954.

Two questions, therefore, present themselves: (1) whether the Trial Court could make a valid order on November 18, 1954, under the facts here existing; and (2) whether this Court should allow the record to be filed under our inherent powers.

I. *Validity of the Circuit Court Order of November 18, 1954.* Section 20 of Act 555 of 1953 provides:

"The record on appeal shall be filed with the appellate court and the appeal there docketed within 90 days

---

[1] The appellee also filed notice of appeal on August 14, 1954, but we are not here concerned with any such cross-appeal.

from the date of filing the notice of appeal; except that, the trial court may prescribe the time for filing and docketing, which in no event shall be less than 90 days from the date of filing the first notice of appeal. In all cases the trial court, in its discretion and with or without motion or notice, may extend the time for filing the record on appeal and docketing the appeal, if its order for extension is made before the expiration of the period for filing and docketing as originally prescribed or extended by a previous order; but the trial court shall not extend the time to a date more than seven months from the date of the entry of the judgment or decree."

When the present appellant filed his notice of appeal in the Circuit Court no order was made for prescribing the time for filing and docketing the record in the appellate court. So under the above quoted Statute, the time was fixed by law at 90 days from the filing of the notice of appeal (which date was August 13, 1954). The next order made by the Circuit Court was on November 18, 1954, which was more than 90 days from the filing of the notice of appeal. The quoted Statute says that the Trial Court ". . . may extend the time for filing the record on appeal and docketing the appeal, *if its order for extension is made before the expiration of the period for filing and docketing as originally prescribed or extended by a previous order; . . .*" Now in the absence of any *previous order,* the one made by the Circuit Court on November 18th was too late.

But the appellant argues that § 20 of Act 555 was copied from the Federal Rules, and that when we adopted the Federal Rules, we adopted the construction which the Federal Courts had placed on such Rules; that the Federal Courts allow extensions to be made; and that we should, therefore, allow such extensions. Section 20 of Act 555 comes to us from § 73 (g) of the Federal Rules;[2] but there are differences between § 20 of Act

---

[2] Here is § 73 (g) of the Federal Rules:
"The record on appeal as provided for in Rules 75 and 76 shall be filed with the appellate court and the appeal there docketed within 40 days from the date of filing the notice of appeal; except that, when more than one appeal is taken from the same judgment to the

555 and § 73 (g) of the Federal Rules.[3] Section 20 of Act 555 allows *90 days* from the filing of the notice of appeal, whereas § 73 (g) allows only *40 days*; and § 20 of Act 555 allows *seven months* from judgment for final filing, whereas § 73 (g) allows only *90 days*. So we did not adopt § 73 (g) verbatim as § 20 of Act 555.

Furthermore, when we enacted § 20 of Act 555, we had a long line of decisions in Arkansas on the power of the Trial Court to extend the time for filing the bill of exceptions;[4] ánd this line of decisions had always held that the order of extension had to be made before the expiration of the period as previously fixed. It is far more reasonable to presume that the Arkansas Legislature enacted Act 555 in the light of our own holdings on the power of the Trial Court to extend time, than it is to presume that it enacted Act 555 in the light of particular federal cases—some of which hold one way and some the other.[5]

An illuminating case is *Chandler* v. *State*, 205 Ark. 74, 167 S. W. 2d 142. There, the motion for new trial was heard and overruled on September 10, 1942, and the

same appellate court, the district court may prescribe the time for filing and docketing, which in no event shall be less than 40 days from the date of filing the first notice of appeal. In all cases the district court in its discretion and with or without motion or notice may extend the time for filing the record on appeal and docketing the appeal, if its order for extension is made before the expiration of the period for filing and docketing as originally prescribed or as extended by a previous order; but the district court shall not extend the time to a day more than 90 days from the date of filing the first notice of appeal."

[3] In the dissenting opinion in *General Box Co.* v. *Scurlock*, 223 Ark. 967, 271 S. W. 2d 40, there is a table that shows the Federal Rule from which each Section of Act 555 of 1953 was patterned.

[4] The filing of the bill of exceptions under our practice *before* Act 555 of 1953 is in many respects equivalent to the filing of the record under Act 555.

[5] The fact that some federal cases hold one way and some hold the other may be demonstrated by citation of the following cases: In the case of *In Re: Gammil*, 129 F. 2d 501, it was held that the District Court had no authority to grant extensions of time for docketing an appeal except within the period for filing and docketing. To the same effect see *Burk* v. *Canfield*, 111 F. 2d 526; and *U. S.* v. *Gallagher*, 151 F. 2d 556. On the other hand there are cases which hold that the Circuit Court of Appeals, if it so desires, may allow a record to be filed after the time fixed by the District Court. Some of these cases are listed in Footnote (7), *infra.*

Court allowed the appellant 45 days to prepare, tender and file the bill of exceptions, which was not tendered to the Trial Judge until October 29, 1942, which was later than the 45 days so allowed. As of October 29, 1942, the Trial Judge signed the bill of exceptions, but this was after the expiration of the time he had previously fixed for it to be tendered. We held that the bill of exceptions was filed too late and ordered it stricken, following our earlier cases of *Boatright* v. *State,* 195 Ark. 611, 113 S. W. 2d 107; and *Austin* v. *State,* 183 Ark. 481, 36 S. W. 2d 400.

At the time of the decision in *Chandler* v. *State,* the Statute on filing a bill of exceptions was contained in § 1543 Pope's Digest, and the pertinent part reads:

"The party objecting to the decision must except at the time the decision is made, and time may be given to reduce the exception to writing, but not beyond the succeeding term; . . ."

Under that Statute we repeatedly held that the bill of exceptions had to be filed within the time allowed by the Court, and that the parties could not by agreement dispense with such requirement. *Faulkner* v. *Bank of McCrory,* 177 Ark. 628, 7 S. W. 2d 326. In a long line of cases we held that a bill of exceptions which was not filed within the time required was a nullity and could not be considered on appeal. See *Green* v. *State,* 96 Ark. 175, 131 S. W. 463; *Austin* v. *State,* 183 Ark. 481, 36 S. W. 2d 400; *Boatright* v. *State,* 195 Ark. 611, 113 S. W. 2d 107. Then came the case of *Chandler* v. *State,* 205 Ark. 74, 167 S. W. 2d 142, in which we held that the bill of exceptions could not be considered when filed after the time fixed even though the Trial Judge had signed it.

It was to overcome that situation that the Legislature first passed Act 10 of 1943, and then Act 90 of 1949, to specifically allow the extension of time to be granted by the Trial Court even after the expiration of a previously fixed time.[6] So when the Legislature passed Act

---

[6] See *Floyd* v. *Richmond,* 211 Ark. 177, 199 S. W. 2d 754.

555 of 1953 there was a long line of decisions in this State that the Trial Court (or Judge thereof), in the absence of express Statute so allowing, had no power to grant an extension of time *after* the expiration of a previously fixed time; and § 20 of Act 555 clearly states that any extension of time must be within a period previously allowed.

We hold that these Arkansas decisions when applied to this case and applied to Act 555 impel the conclusion that the Trial Court was without power to grant an extension after the expiration of the previous time; so the order of the Trial Court of November 18, 1954, was made too late and the record was not filed in this Court within the time allowed by law.

II. *Should This Court Allow the Record to Be Filed?* The appellant insists that even though the Trial Court lacked authority to extend the time, nevertheless this Court should allow the record to be filed because of the language found in § 2 of Act 555.[7]

It is not to be doubted that under our inherent constitutional power, this Court could, in a most exceptional case, allow a record to be filed after the time fixed. However, the fact that we have the power does not mean that it should be exercised except in a most extraordinary case. Here, there is no such: the parties let the time expire for filing the record and also let the time expire in which to ask the Trial Court to grant an extension. There was no flood, death, riot, act of God, or other great unavoidable casualty that prevented either

---

[7] The language found in § 2 of Act 555 comes—with variations—from § 73 (g) of the Federal Rules; and the part particularly cited and relied on by appellant, reads: "Failure of the appellant to take any of the further steps to secure the review of the judgment or decree appealed from shall not affect the validity of the appeal but shall be grounds only for such action as the appellate court deems appropriate, which may include dismissal of the appeal." The Federal Courts (under § 73 (g) of the Federal Rules) hold that the Federal Court should be slow to exercise the power to allow appeals to be filed when the record was not tendered within the designated time. See *In Re: Gammil*, 129 F. 2d 501; *Arline* v. *Brown*, 190 F. 2d 180; *Stumpf* v. *Matthews*, 195 F. 2d 25; *Markham* v. *Kallimanis*, 151 F. 2d 145; *Citizens Protective League* v. *Clark*, 178 F. 2d 703; and *Maghan* v. *Young*, 154 F. 2d 13.

the filing of the record within time or timely request to the Trial Court to grant extension. This Court has possessed the same inherent power ever since Statehood; but in a long line of cases we have refused to exercise that inherent power to allow an appellant to present the evidence when it was filed too late. Some such cases are: *Chandler* v. *State,* 205 Ark. 74, 167 S. W. 2d 142; *Johnson* v. *U. S. Gypsum Co.,* 217 Ark. 264, 229 S. W. 2d 671; *Criner* v. *Criner,* 217 Ark. 722, 233 S. W. 2d 393; and *Prescott, Ark. Tel. Corp.* v. *McFarland,* 217 Ark. 731, 233 S. W. 2d 70. We see no reason for departing, in the case at bar, from the rule established in our adjudications.

It is claimed that *Norfleet* v. *Norfleet,* 223 Ark. 751, 268 S. W. 2d 387, is authority for us to allow the record to be filed in the case at bar; but we do not so understand the Norfleet case. There, the losing litigant in the Trial Court filed a timely notice of appeal but took no further action and allowed the 90-day period to expire. The prevailing litigant in the Trial Court then filed the record in this Court under the authority of § 17 of Act 555 of 1953, and here moved for dismissal. We granted the motion because the appellant showed no reason for asking us to exercise our inherent power. The same rule applies here. In the Norfleet case we said of the failure of the losing litigant to file the record within the 90 days: ''The result was to leave the appellee in a state of uncertainty as appellant might either have abandoned the appeal or have intended to offer an excuse for the delay.'' In dismissing the appeal in the Norfleet case we were saying that our inherent power would not be exercised. That is what we are saying in the case at bar.

The prevailing litigant in any case is entitled to know when the judgment becomes final. If the Trial Court has fixed a time for the filing of the record on appeal and that time has expired then the prevailing litigant should be allowed to presume that the judgment is final in the absence of great unavoidable casualty. If four days after the time has expired the Trial Court can then grant a further extension, then three months

after the time has expired the Trial Court can grant an extension; and no judgment would ever be final until seven months from the date of rendition in the Trial Court. That was not the purpose of the law: and in the interest of finality this Court should not exercise its inherent powers except in a most extraordinary situation.

Therefore the rule on the clerk in this case is denied.

Justices MILLWEE, GEORGE ROSE SMITH and ROBINSON dissent.

GEORGE ROSE SMITH, J., dissenting. A dominant purpose underlay the enactment of Act 555 of 1953 — the desire that the greatest possible number of cases be decided on their merits rather than on technicalities of procedure. To that end procedural obstacles and pitfalls that had accumulated for decades were swept away. In place of innumerable procedural requirements that were jurisdictional in the sense that a misstep was fatal, Act 555 provided a single, simple jurisdictional requirement—the timely filing of a notice of appeal.

By today's decision the clean slate that was handed to this court has been defaced at the first opportunity. This appeal, as well as others on our docket which will be controlled by the rule announced, is being dismissed without the merits having been reached. This action is taken not because the litigants failed to file their notice of appeal, but because they neglected to take another step within ninety days after the only essential requirement had been satisfied.

I regard as both illogical and reactionary the majority's reliance upon *Chandler* v. *State*. Illogical in that it is certainly a novel doctrine, contrary to every precedent, to say that in adopting the law of another jurisdiction our legislature does so not with reference to the cases that have construed that very law but with reference to our cases that have construed entirely different statutes. Reactionary in that *Chandler* v. *State*, like too many other cases in the past, went off on a technicality rather than on the merits. If we are to rely upon the existence of old technicalities as a reason for creating

new ones, the simplification of appellate procedure is in a bad way.

In this case the trial court, for reasons which it deemed sufficient, undertook to grant an extension of time more than ninety days after the filing of the notice of appeal. Even if the question were whether the trial court had the *power* to grant the extension, a strong argument could be made in favor of the court's power. Federal Rule 73 (g), from which § 20 of Act 555 was copied, directs that the order of extension be made within the original period for docketing the appeal. But Rule 73 (g) is mandatory only because Federal Rule 6 expressly provides that the time limitation imposed by Rule 73 (g) cannot be extended. Our legislature adopted Rule 73 (g) but did not adopt the mandatory limitation imposed by Rule 6, from which we can with reason infer that our law is meant to be directory only.

But, as I have intimated, the question is not one of the trial court's *power*. Overriding every other provision in Act 555 is this unmistakable provision in § 2: "Failure of the appellant to take any of the further steps [in addition to filing the notice of appeal] to secure the review of the judgment or decree appealed from shall not affect the validity of the appeal, but shall be ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal." By this language the legislature put the responsibility for dismissing the appeal squarely upon the members of this court. It will not do to shrug off that responsibility by merely attempting to prove the trial court's want of power. We are still faced with the question of what action we are to take in the exercise of our own undoubted power.

In my opinion we should be guided by the trial judge's expression of his belief that an extension of time is warranted. It is the trial judge alone who knows the circumstances firsthand. It is he alone who can interrogate the parties, the attorneys, the reporter, the clerk, or any one else whose conduct may have occasioned the delay. Our own position with respect to these matters

is so demonstrably inferior to that of the trial judge that I can see no excuse for summarily rejecting his informed opinion. Even if it should be conceded that the trial court is without power to grant an extension of time, his willingness to do so should be the strongest factor in our own deliberations.

To dismiss a case other than on its merits is repugnant to any one's sense of justice. In Act 555 the legislature did not refer even indirectly to the floods, deaths, riots, and acts of God which the majority have searched for in the case at bar. The requirement of completely unavoidable casualty has been read into the law without, as far as I can see, any basis except a strong reverence for outworn technicalities. This attitude is wholly at variance with the legislature's undoubted and commendable desire to increase the number of cases decided on substantive rather than adjectival issues. If the new law is to be interpreted in the spirit that motivated its passage, this appeal should be kept on the docket.

ROBINSON J., joins in this opinion.

## ON REHEARING

WARD, J. In this case a divided court on February 28, 1955, made an interpretation of §§ 2 and 20 of Act 555 of 1953 which, for the purposes of this opinion, was to this effect; appellant must file his record with the clerk of this court (a) within 90 days after the notice of appeal is given or (b) within the time as extended by the trial court. It was further held that any extension of time [made by the trial court] must be made before the said 90 days period expires or it must be made before the expiration of any previous extension. It was also held that where there was a noncompliance with the above requirements because of an unavoidable casualty this court could, under its inherent powers, permit an appeal.

The three judges of this court who dissented to the original opinion thought, as we understand it, that the failure of an appellant to file his record in this court within the 90 days period or within any extension thereof

would not automatically constitute a bar to the appeal but thought that, under such a situation, this court would have the discretion to allow or disallow the appeal. The dissenting judges based their views, at least partially, on the following sentence found in said § 2: "Failure of the appellant to take any of the further steps to secure the review of judgment or decree appealed from shall not affect the validity of the appeal, but shall be ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal."

It must be recognized that the language quoted above is not readily reconcilable with the language in § 20 relating to the 90 days period and extension thereof. It must also be recognized that this situation constitutes a valid ground for conscientious differences in views and conclusions, as exemplified by the division of this court.

It must therefore be conceded by fair minds as a demonstrative fact that able and studious practitioners could not be expected to interpret alike the language in the two sections mentioned. This being true a situation has arisen where justice may be denied a litigant because of the acts of his attorney where the attorney himself could not be justly criticized.

Considering all that has been said, fairness and justice calls for any justified relief we can grant to litigants who had no warning of our rule of procedure as laid down in the original opinion.

This can be done without disturbing the rule by extending the effective date of the original opinion. Some members of this court manifestly feel that this cannot be done without doing violence to established precedents. However it appears that previous pronouncements of this court on related matters justify the action here taken.

(a)   *Caveats.*   In two recent cases [*Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973, and *O'Brien* v. *Atlas Finance Co.*, 223 Ark. 176, 264 S. W. 2d 839] we extended the effective date of our opinions as to certain classes of litigation. It is true that the situ-

ations in those cases were not exactly analogous to those of the case under consideration, but the reason that prompted the action in both instances was the same— to avoid hurting innocent people. In the instances cited we realized litigants had relied on our former decisions, while here we realize litigants had to rely on procedural statutes which were ambiguous. It is significant also that in the *caveat* opinions we were dealing with substantive rights, while here we are dealing only with procedural matters.

(b) *Per Curiam orders.* Likewise on two different occasions we have recently issued *per curiam* orders which lend justification for this procedure.

1.  On June 8, 1953, we issued this order.

"The court expects, within the near future, to revise its rules with a view of harmonization with Act 555 of 1953. Pending that action the court, under its inherent rulemaking power, authorizes litigants (at their option) to proceed under Act 555 or under the earlier statutes— which by reference are hereby adopted as temporary rules of the court—and the present rules of the court."

When the above order was issued Act 555 was as much the law of this state as it now is. Not only so, but the whole procedure [nullified by Act 555] was as invalid as it now is. So, from June 8, 1953, to January 10, 1954 [when the new rules were promulgated] we in effect ignored said §§ 2 and 20 and breathed life into dead statutes. It appears conceded now that our action was justified under the circumstances then existing.

2.  On October 25, 1954, we issued this order.

"The court's revision of its rules, effective January 10, 1954, requires that the appellant's abstract in every case *be preceded by a concise statement of the case* and by a *numbered list of the points to be relied upon for reversal,* and *that arguments in the brief be presented under sub-headings corresponding to the outline* of points to be relied upon. Rule 9, printed in 221 Ark. 965.

"After Jan. 1, 1955, the Clerk is directed to reject any brief not prepared in accordance with the rules."

Thus it appears we felt justified in extending the effective dates of one of our rules for a period of more than two months.

It is, of course, desirable that the rules of this court should be constant and uniformly enforced once they have been clearly defined. However, rules are instruments to achieve and not to thwart justice, and while they are in a formative stage and where no harm results rigidity may well be relaxed in the interest of justice.

The conclusion is therefore that the original opinion [here considered on rehearing] shall be effective only as of May 15, 1955, and the clerk of this court is directed to accept and file the record tendered by appellant herein.

On authority of the original opinion herein we issued orders sustaining the clerk in refusing to allow the records to be filed in No. 635 *Neal* v. *Cummins,* No. 651 *Fike* v. *Newlin,* and No. 696 *Wilson* v. *Morse Mill Co.* Case No. 687 *Wills* v. *Hill* is now pending on a motion to dismiss the appeal. On all of these cases just mentioned the record was refused for basically the same reason for which the record herein was refused. Accordingly the clerk is directed to accept the record in the above mentioned cases.

Also since there may be other cases where the record would be barred solely because of the rule announced in the original opinion, the clerk, in such instances, is directed to accept until May 15, 1955, the tender of records, provided, of course, they are tendered within seven months after entry of the judgment or decree appealed from.

Justices MILLWEE, GEORGE ROSE SMITH and ROBINSON concur.

The Chief Justice and Justice McFADDIN dissent.

SAM ROBINSON, Associate Justice (concurring on Rehearing). I joined in the dissenting opinion rendered in

this case last February 28th, and I have not changed my view. Act 555, Section 2, is explicit in providing:

"When an appeal is permitted by law from the Circuit, Chancery or Probate Court, any party to the action may appeal from a judgment or decree, by filing with the court in which the case is tried a notice of appeal within 30 days from the entry of the judgment or decree appealed from, unless a shorter time is provided by law. *Failure of the appellant to take any of the further steps to secure the review of the judgment or decree appealed from shall not affect the validity of the appeal, but shall be ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal.*"

It is hard to understand how the language and its meaning could be any clearer. In my opinion, an appeal is taken when the thirty days notice of appeal is given, and this court has the authority under the Act to permit the cause to proceed to a final decision, even though appellants have not complied with other requirements of Act 555.

When the facts and circumstances in the cases mentioned in the opinion on rehearing are taken into consideration, I think it would be an abuse of discretion to dismiss the appeals. Hence, I concur in the opinion on rehearing permitting the cases to proceed to decisions on the merits.

Ed. F. McFADDIN, Associate Justice (dissenting on Rehearing). In this case I am cast in the novel role of having written the opinion delivered on February 28, 1955, and now dissenting from Justice Ward's opinion on rehearing in the same case, even though the rehearing opinion impliedly concedes that the opinion of February 28, 1955 is correct. My dissent goes to that part of Justice Ward's opinion on rehearing (hereinafter called "rehearing opinion") which suspends until May 15, 1955 the effective date of the February 28, 1955 opinion. The rehearing opinion is really the granting of a judicial indul-

gence[1] on the theory that some litigants did not know that we were going to declare the law to be as we did in the majority opinion of February 28, 1955. The rule has always been the "ignorance of the law is no excuse"; but this rehearing opinion changes that rule and sets a dangerous precedent toward the overcoming of Constitutional and Statutory provisions.

Some may say that the rehearing opinion is the same as the "caveats" which we issued in *Hare v. General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973, and *O'Brien v. Atlas Finance Co.*, 223 Ark. 176, 264 S. W. 2d 839. But there is a great distinction between what was done in those cases and what is being done in the rehearing opinion in the case at bar. In the Hare and O'Brien cases we were overruling *prior decisions* of this Court on which the public had relied, so we over-ruled those decisions prospectively. In *Public Loan Corp. v. Peterson*, 224 Ark. 22, 271 S. W. 2d 353, it was pointed out of the Hare case (and the same thing is true of the O'Brien case):

"But there we overruled several earlier decisions which had sanctioned an artificial distinction between a cash sale and a credit sale. Inasmuch as the Finance Company in the Hare case, and others similarly situated, had presumably relied upon our prior cases in making their loans we were unwilling to give a retroactive effect to our ruling, even though we were at liberty to do so."

In short it is only where a person relies on a *prior decision of the Court* that it is overruled prospectively —i. e. by caveat. But in the case at bar we are not overruling any *prior decision* of this Court: we are declaring for the *first time* what a Legislative enactment (Act 555 of 1953)[2] means in the situation here presented. We held

---

[1] Webster's Dictionary defines "indulgence" as "an extension of the time for performance, granted as a favor". It is with that meaning that I use the word in this dissent.

[2] In *General Box Co. v. Scurlock*, 223 Ark. 967, 271 S.W. 2d 40, I dissented from the holding that Act 555 provided an exclusive method of appeal. I wanted to hold that Act 555 went along with our previous Statute as an alternative method of appeal. If my views had been accepted in *General Box Co. v. Scurlock* the litigants in *West v. Smith* (and the other cases mentioned in this re-

on February 28, 1955 that the said Act made a certain definite requirement. Now in the rehearing opinion the same definite requirement is reiterated: yet an indulgence is granted until May 15, 1955 before the law will be put into effect[3], even though the Legislative enactment—Act 555 of 1953—by the Constitution went into effect in June, 1953, 90 days after the adjournment of the 1953 Legislature. In short, the Supreme Court is now declaring Legislative Acts to go into effect some time after the Court passes on the matters. This is a novel idea and, as I say, it is the granting of a judicial indulgence.

In *Public Loan Corp. of Fayetteville* v. *Peterson,* 224 Ark. 22, 271 S. W. 2d 353, we were asked to hold that transactions undertaken under Act 203 of 1951 should be held valid because the transactions were consummated before our opinion in *Winston* v. *Personal Finance Co.*, 220 Ark. 580, 249 S. W. 2d 315, which declared the Act unconstitutional. In other words, we were asked to grant an indulgence in that case—not because the parties had acted under a *prior decision* of this Court but because they had acted under a Legislative enactment not theretofore considered by the Court. We refused to grant such an indulgence in *Public Loan Corp.* v. *Peterson*: yet now by the rehearing opinion this Court is doing the same thing—regarding Act 555 of 1953—that it refused to do in the Peterson case regarding Act 203 of 1951.

I predict that the effect of the rehearing opinion will be a tendency to grant indulgence in future cases because some litigant did not understand the law; and thus the stability of our holdings will always be subject to attack on the theory 'this is a new law and it was not known, so grant us an indulgence'. That is not the basis of our Anglo-Saxon jurisprudence; so I respectfully dissent from the rehearing opinion in this case.

---

hearing opinion) might not have been hurt. Now apparently a way has been discovered to "soften" the holding in *General Box* v. *Scurlock*. I sympathize with the litigants but I think this Court should adopt a consistent course.

[3] It is said that our previous rules did this. No — we made rules prospectively. Here we are making rules retrospectively.