In re Tommy ROBINSON and Marilyn Robinson, Debtors.

GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,

v.

Tommy ROBINSON and Marilyn Robinson and A. L. Tenney, Trustee, Defendants.

Bankruptcy Nos. LR 81–276, LR 81–1154. Adv. No. 81–822.

United States Bankruptcy Court, E. D. Arkansas, W. D.

Jan. 7, 1982.

Randolph B. Hopkins, Little Rock, Ark., for plaintiff.

Jimmy Eaton, Little Rock, Ark., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT GRANTING PLAINTIFF'S COMPLAINT FOR RELIEF FROM AUTOMATIC STAY AND FINDING THE DEFENDANT, TOMMY ROBINSON, CIVILLY LIABLE TO THE PLAINTIFF IN TRESPASS AND SETTING HEARING ON THE ISSUES OF DAMAGES AND UPON WHETHER PLAINTIFF IS LIABLE FOR UNLAWFUL REPOSSESSION

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff seeks relief from the automatic stay and reclamation of a 1979 Cadillac

Coupe El Dorado, vehicle identification number 6L57B9E643797. Additionally, it requests dismissal of the defendant debtors' Chapter 13 proceedings or conversion of them to straight liquidation proceedings under Chapter 7 of the Bankruptcy Code.

A hearing was held on the merits of the claim for relief on January 5, 1982, at which time the plaintiff appeared by counsel, Randolph B. Hopkins, Esquire, and the debtors appeared personally and by counsel, Jimmy Eaton, Esquire. The evidence which was then adduced demonstrated the following facts: The plaintiff has a valid and perfected security interest in the 1979 Cadillac. A balance was owed on the note underlying the security agreement of $12,516.80 as of the date of the commencement of these Chapter 13 proceedings. The uncontradicted evidence is to the effect that the value of the vehicle is not more than $12,200.00. The defendants are to pay the amount at the rate of $391.15 per month. In this regard, they are now some $5800.00 in arrears.

Further, the history of these Chapter 13 proceedings evinces, not only irregularity of payment into the plan, but other irregularities as well. On October 6, 1981, this court entered its order directing turnover of a secured vehicle to the Chrysler Credit Corporation within 10 days and also directed the debtors to cure the then existing defaults in payments under the plan. On November 4, 1981, after subsequent hearing, these Chapter 13 proceedings were dismissed "for failure to comply with the order of October [6], 1981." On November 6, 1981, the debtors moved to reconsider the order of dismissal on the ground that Mr. Robinson had "gained employment at Kennedy Air Conditioning" and was therefore "able to resume payments and to start catching up on the plan payments." On December 8, 1981, the court entered its order vacating the order of dismissal and reinstating the Chapter 13 plan "on condition that monthly payments of $490.00 unfailingly be made."

Subsequent to the dismissal and also subsequent to the filing of the motion to recon-

sider the dismissal, the plaintiff made persistent attempts to repossess the Cadillac and, as a result of those attempts, the debtor, Tommy Robinson, gave over custody of the vehicle and it was repossessed on December 15, 1981. This was after the order of December 8, 1981, reinstating the Chapter 13 proceedings, but there is no indication or evidence that the plaintiff had actual notice or knowledge of the reinstatement. Subsequently, on the night of December 21, 1981, the debtor, Tommy Robinson, gave the keys to the Cadillac to one Joe Johnson and authorized Mr. Johnson to secure the return of the Cadillac to Mr. Robinson's custody. Mr. Johnson did so, according to the uncontradicted evidence, cutting a chain which had been attached to the car to ensure against its being removed, and also trespassing upon the premises being occupied by the plaintiff in doing so. The debtors are currently in possession of the automobile, having gained such possession through these means.

Finally, to say the least, by reason of the uncertainty surrounding the debtors' past statement of ability to make monthly payments of $490.00 or greater into the plan, the changes in their employment over the life of the plan, and the recency of their current employment, it seems improbable that the arrearages owed to the plaintiff, now approaching the sum of $6,000.00, can be made up pursuant to the plan.

Under such circumstances, the court can do nothing but grant the requested relief from stay. As to a secured creditor, it has been held that, "where the debtor has an equity in the property or it is necessary to his performance under the plan and where the creditor's security will not be impaired by a stay, the creditor may be stayed from foreclosing on appropriate conditions to cure defaults and maintain payments on his claim to the extent it is secured." 15 Collier on Bankruptcy ¶ 13–401.01, p. 13–401–5 (1978).

These principles, initially asseverated under the former Bankruptcy Act, have continued viability under the new Bankruptcy Code, which provides that se-

cured creditor must receive "adequate protection," i.e., the "indubitable equivalent" of the value of its claim as of the effective date of the Chapter 13 plan. See §§ 361(3), 1325 of the Bankruptcy Code. Thus, when value and balance due are nearly the same, as in the action at bar, payments must be made to the secured creditor according to the security agreement. In the action at bar, however, as the facts above found show, the plan of the debtors, as it now exists, does not adequately protect the plaintiff when it makes no provision for curing the vast arrearage which currently exists. Nor is it likely that such a provision can be made, when as found above, the figures given by the debtors in support of the plan have been overstated and unreliable and when the recency of their current employments is such that the constancy of that employment can only be regarded as quite uncertain.

Further, there is no showing that the debtors have any equity in the automobile nor that it is necessary for their economic rehabilitation under the provisions of Chapter 13. In fact, when the monthly payments which are to be made are around $500.00, it is all but certain that the debtors' rehabilitation would be furthered by relinquishment of its custody. Even if a replacement vehicle would have to be purchased, a much cheaper one would suffice for the purposes of rehabilitation.

Therefore, for the foregoing reasons, it is concluded that the plaintiff should be granted relief from the stay and reclamation of the 1979 Cadillac automobile.

■ The court must also take note that the plaintiff's retaking of possession of the 1979 Cadillac after the filing of the motion to reconsider the dismissal was in violation of the automatic stay if the plaintiff had notice of the filing of the motion to reconsider. See, *In re Saez*, 13 B.R. 605 (D.P.R. Bkrtcy.1981). But no evidentiary proof exists of the plaintiff's actual knowledge of the pendency of the motion to reconsider.[1]

■ Regardless, however, of whether the plaintiff's possession of the automobile on the night of December 21, 1981, was lawful or not, the debtor, Tommy Robinson, by and through his agent Johnson, committed a trespass against the plaintiff's property by going onto the premises occupied by it and destroying a chain in the process of freeing the automobile and perhaps effecting other damages.[2] The provisions of the Bankruptcy Code contain no provision for dismissing a Chapter 13 case or denying a debtor's discharge on the basis of such misconduct. But the bankruptcy court, pursuant to § 1471(c) and (d), Title 28, United States Code, possesses jurisdiction and power to assess and compel the payment of damages for the tort of trespass. Therefore, because the facts found above demonstrate the liability of the debtor, Tommy Robinson, in trespass, a judgment on liability will herewith be rendered. A hearing will also be set for a later date, at which the plaintiff will have an opportunity to offer proof of any damages which it may have suffered as a result of the trespass and of their magnitude in value.

At the same hearing, the debtor, Tommy Robinson, will be granted an opportunity to demonstrate that the plaintiff had notice of the motion to reconsider before the repossession of the Cadillac on December 15, 1981, and, if so, to adduce evidence of damages suffered by him as a result of any unlawful repossession. It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the plaintiff be, and it is hereby, granted relief

---

1. Although the motion to reconsider purports on its face to have been served on the plaintiff, Mr. Eaton, counsel for defendants, stated in the course of the trial of this case that the plaintiff had no notice of the prior proceeding which culminated in reinstatement of the case.

2. "It is not necessary that the plaintiff should have the absolute title in order to recover for an injury to real estate. Possession alone may be sufficient for that purpose." *Davenport v. Devenaux*, 45 Ark. 341, 345 (1885). Damages may be awarded, under the law of Arkansas, for the trespass to realty and for damages to things affixed thereto or to personal property thereon. See, e.g., *Floyd v. Richmond*, 211 Ark. 177, 199 S.W.2d 754 (1947).

from the automatic stay and reclamation of the above-mentioned 1979 Cadillac. It is further

ORDERED AND ADJUDGED that judgment be, and it is hereby, entered for plaintiff and against the defendant, Tommy Robinson, on the issue of liability only for the tort of trespass. And it is further

ORDERED, that a hearing be held on February 1, 1982, at 1:30 p. m., in Room 445 United States Courthouse, Little Rock, Arkansas, on the issue of damages for the trespass and also upon the potential liability of plaintiff for unlawful repossession of the 1979 Cadillac.